IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2001

## STATE OF TENNESSEE v. RONALD W. BYRD

**Appeal as of Right from the Criminal Court for Sullivan County**
**No. S41, 603     Phyllis H. Miller, Judge**

**No. E2000-00520-CCA-R3-CD**
**July 26, 2001**

The appellant, Ronald W. Byrd, was convicted in the Sullivan County Criminal Court of attempt to commit aggravated kidnapping, aggravated criminal trespass, and resisting arrest. The trial court sentenced the appellant to a total effective sentence of six years incarceration in the Tennessee Department of Correction. On appeal, the appellant raises the following issues for our review: (1) whether the trial court should have permitted the jury to consider the issue of whether the appellant's conduct was fairly motivated by his desire to make a citizen's arrest; and (2) whether the evidence is sufficient as a matter of law to sustain a conviction of attempted aggravated kidnapping. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA McGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Donald E. Spurrell (appeal), Johnson City, Tennessee; and Leslie W. Bailey, Jr. (trial), Kingsport, Tennessee, for the appellant, Ronald W. Byrd.

Paul G. Summers, Attorney General and Reporter; Patricia Kussman, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Robert H. Montgomery and Barry P. Staubus, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

In 1991, the appellant, Ronald W. Byrd, was fired from his job at the U.S. Post Office in Colorado Springs, Colorado. The appellant perceived this firing to be the result of a conspiracy against him and an abuse of power by those in charge of the postal service. The appellant claimed that he was harassed because he was a "federal whistleblower and non-union member." In 1995, the appellant moved to Tennessee. Soon thereafter, seeking help to resolve his complaints, the appellant began to send "petitions and grievances" to Congressman Bill Jenkins.

The appellant frequently stopped by Congressman Jenkins' Kingsport, Tennessee office, which is located inside a post office building. He informed the caseworkers in the office that he possessed a "fifty-pound box of tapes, documents, witness statements, etc." that would prove the existence of a conspiracy against him. He continually insisted that someone from Congressman Jenkins' office review all of the material contained in the box and have him reinstated in his postal job, with back pay. Additionally, he wanted an official apology from the Postmaster General for the abuses inflicted upon him by employees of the postal service. During his visits and telephone calls, the appellant primarily dealt with Congressman Jenkins' aide, District Director Bill Snodgrass.

Members of Congressman Jenkins' office staff contacted the office of the Postmaster General and the Federal Bureau of Investigation (FBI) in an attempt to gain a positive resolution to the appellant's complaints. As a result of those contacts, FBI agent Stephen E. Buttolph met with the appellant, spending at least two hours reviewing the appellant's complaints. After considering the complaints and reviewing some of the contents of the box, the FBI sent the appellant a letter informing him that his problems did not fall within the FBI's jurisdiction and, therefore, the FBI would be unable to further assist him.

Subsequently, the appellant returned to Congressman Jenkins' office requesting additional assistance. Because Congressman Jenkins' office does not perform investigative functions, the staff concluded that they did not have the resources to further assist the appellant. Congressman Jenkins' aides, Chief of Staff Jeff Anderson and Director Snodgrass, drafted a letter to the appellant informing him that, because there was nothing further Congressman Jenkins' office could do to resolve the appellant's complaints, they would no longer be able to assist him with this particular matter. Upon receipt of the letter, the appellant called Anderson in Washington, D.C. During the conversation, the appellant was "angry," "belligerent," and "profane," and he threatened Anderson by saying, "I'm going to whip your ass, boy." The appellant informed Anderson that the appellant would go to Congressman Jenkins' Kingsport office the next day and, if the case was not resolved to his satisfaction, he would then place Snodgrass under citizen's arrest. Anderson informed Congressman Jenkins' Kingsport office of the appellant's threat. As a precaution, the staff contacted the Kingsport Police Department. Subsequently, Detectives Marvin Bell and James Moffatt were sent to Congressman Jenkins' office as a security measure.

On July 7, 1998, the appellant went to Congressman Jenkins' Kingsport office. He met with Snodgrass and was told, once again, that the congressman's office had exhausted their available resources and could no longer assist the appellant with this matter. Snodgrass then repeatedly asked the appellant to leave the office. The appellant became upset and told Snodgrass, "stand up, turn around, put your hands behind your back. I'm placing you under citizen's arrest." The appellant then stood and approached Snodgrass. In his right hand the appellant held three plastic strips, which Detective Bell referred to as "flexi-cuffs," and which are sometimes used by police

instead of handcuffs.[1] The appellant testified that he intended to cuff Snodgrass, inform him of the crimes committed by Snodgrass, read Snodgrass his Miranda rights, and take Snodgrass to the federal marshal's office in Greeneville.

When the appellant approached Snodgrass to "arrest" him, the detectives entered Snodgrass' office and identified themselves as officers of the Kingsport Police Department. The detectives were dressed in plain clothes but wore their police badges on their jackets. They informed the appellant that he could not lawfully arrest Snodgrass and asked the appellant several times to leave the office. The appellant refused to leave and again said that he was going to arrest Snodgrass and take him to the federal marshal's office in Greeneville. As the appellant reached for Snodgrass with his right hand, Detective Moffatt grabbed the appellant's right arm. The appellant then reached for Snodgrass with his left hand and was stopped by Detective Bell. Detective Bell noted that the appellant struggled with the officers so vigorously that Detective Bell strained one of his biceps while restraining the appellant.

A jury in the Sullivan County Criminal Court convicted the appellant of attempt to commit aggravated kidnapping, aggravated criminal trespass, and resisting arrest. The trial court sentenced the appellant as a Range I standard offender to six years incarceration in the Tennessee Department of Correction for the attempted aggravated kidnapping conviction, to six months in the Sullivan County Jail for the criminal trespass conviction, and to four months for the resisting arrest conviction. The trial court further ordered the appellant to serve his sentences concurrently for a total effective sentence of six years incarceration. Again we note that the appellant raises the following issues for our appellate review: (1) whether the trial court should have permitted the jury to consider the issue of whether the appellant's conduct was fairly motivated by his desire to make a citizen's arrest; and (2) whether the evidence is sufficient as a matter of law to sustain a conviction of attempted aggravated kidnapping.[2] We will analyze the appellant's claims in reverse order.

## II. Analysis
### A. Sufficiency of the Evidence
On appeal, when an appellant challenges the sufficiency of the evidence supporting his convictions, he must establish that no reasonable trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). This is because a jury conviction, in essence, removes the presumption of the defendant's innocence and replaces it with one of guilt; therefore, the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

---

[1] The "flexi-cuff" is a thin strip of plastic that bends to form a circle that binds a suspect's hands. Once the "flexi-cuff" is engaged, the cuff can only be removed by cutting the plastic. Detective Bell testified that the police only use the "flexi-cuffs" "[a]s a last resort, [because] it is not very comfortable."

[2] The appellant does not contest his convictions of resisting arrest and criminal trespass.

During our review of the sufficiency of the evidence, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, this court does not determine the credibility of the witnesses or the weight and value to be given the evidence, nor do we resolve the factual issues raised by the evidence. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Such issues are instead resolved by the trier of fact. Id.

A person commits aggravated kidnapping when that person knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty for the purpose of interfering with the performance of any governmental or political function. See Tenn. Code Ann. § 39-13-302(a) and -304(a)(2) (1997). As explained in Tenn. Code Ann. § 39-13-301(2) (1997), "'[u]nlawful' means, with respect to removal or confinement, one which is accomplished by force, threat or fraud." A person acts knowingly when the person is aware that his conduct is reasonably certain to cause the result. See Tenn. Code Ann. § 39-11-302(b) (1997). Moreover, "[w]hen acting knowingly suffices to establish an element, that element is also established if a person acts intentionally."[3] Tenn. Code Ann. § 39-11-301(a)(2) (1997). Additionally, Tenn. Code Ann. § 39-12-101 (1997) provides:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

In the attempt statute, "[s]ubdivision (a)(1) is directed at a completed course of conduct," while "[s]ubdivision (a)(2) is a codification of the . . . 'last proximate act' doctrine." Tenn. Code Ann. § 39-12-101, Sentencing Commission Comments. Additionally, "[s]ubdivision (a)(3) provides that the point of attempt responsibility, beyond mere preparation but short of the completed offense, is reached when an individual's intentional acts constitute a 'substantial step toward the commission

---

[3] Tenn. Code Ann. § 39-11-302(a) provides that "'[i]ntentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result."

of the offense.'" Id. The record in the instant case clearly shows that the appellant was guilty of attempt as codified at Tenn. Code Ann. § 39-12-101(a)(3).

Snodgrass testified that, although he repeatedly asked the appellant to leave Congressman Jenkins' office, the appellant refused to leave. Snodgrass maintained that the appellant told him that he was going to arrest Snodgrass, demanded that Snodgrass place his hands against the wall, and then the appellant approached Snodgrass bearing three "flexi-cuffs" in his right hand. Snodgrass testified that the appellant "got right up against me" before being stopped by the officers. Additionally, Detective Bell testified that the appellant informed Snodgrass that he was going to be arrested, and the appellant approached Snodgrass with the "flexi-cuffs." Detective Bell stated that the appellant was in Snodgrass' "personal space" before the officers halted the appellant's approach. Furthermore, Detective Moffatt testified that the officers repeatedly asked the appellant to leave and informed him that he did not have the authority to arrest Snodgrass. However, the appellant responded that he could arrest Snodgrass and then attempted to restrain Snodgrass.

Moreover, at trial, the appellant himself admitted that he took three "flexi-cuffs" to Congressman Jenkins' office intending to arrest Snodgrass if he observed Snodgrass committing a crime while the appellant was at the office. The appellant stated that he told Snodgrass that he believed that no one would even attempt to help him with his complaints. Specifically, the appellant testified that

> . . . [A]t that point, [Snodgrass] told me, we're, I think he went on and said, we're not going to do anything more about this. At that point, I realized that he because of not only the information that I was giving him, but because of the two letters kind of banding me back and forth; was party to this conspiracy, abuse of power and obstruction of justice. And I told him, stand up, turn around, put your hands behind your back. I'm placing you under citizen's arrest. I'm going to take you to the Federal Marshal's[] office in Greeneville, Tennessee. I stood up, and approached Mr. Snodgrass, was intending to tell him what his crimes were specifically and to read to him, I had a little card in my wallet, read him his Miranda rights, and proceed to take him to the proper authorities.

Furthermore, the appellant also testified that, when the police entered the office,

> I was approaching Mr. Snodgrass to arrest him. I was going to, let's say, put these cuffs on him, so, that he would not be able to escape because he was under arrest, let's say to control the subject. And as I reached out to grab Mr. Snodgrass' left arm, a hand came down on my right arm, down to my side. I think that's the hand that I had the little plastic ties in. I reached out with my left hand to grab Mr. Snodgrass' right hand. Another arm hit my arm, and I was pulled backward . . . .

Even without the corroborating testimony of Snodgrass, Bell, and Moffatt, the appellant's testimony alone is sufficient to sustain his conviction of attempted aggravated kidnapping. This court has previously stated that "a substantial step towards the commission of [the crime occurs] where the [appellant] possessed materials to be used in the commission of the crime at or near the crime scene, and the possession of those materials served no lawful purpose." State v. Raymond Mitchell, III, Nos. 01C01-9612-CR-00502, 01C01-9702-CR-00057, 1999 WL 559930, at *15 (Tenn. Crim. App. at Nashville, July 30, 1999), cert. denied, __ U.S. __, 121 S. Ct. 69 (2000). The appellant's own testimony clearly shows that he intended to confine Snodgrass by using the "flexi-cuffs" and then take Snodgrass from Congressman Jenkins' office to the federal marshal's office in Greeneville. See State v. William B. Thurbley, No. 03C01-9709-CC-00414, 1999 WL 301591, at *9 (Tenn. Crim. App. at Knoxville, May 11, 1999), perm. to appeal granted, (Tenn. 1999); see also Tenn. Code Ann. § 39-12-101, Sentencing Commission Comments (explaining that "[i]n addition to the elements required by subdivision (a)(1), (2), or (3), to be convicted of criminal attempt the offender must act 'with the kind of culpability otherwise required' for the object offense"); cf. State v. David Allen Vaughn, No. W1999-01647-CCA-R3-CD, 1999 WL 1531346, at *2 (Tenn. Crim. App. at Jackson, December 27, 1999), perm. to appeal denied, (Tenn. 2000) (stating that "because the intent required for an attempt is an intent to commit the contemplated crime, attempt to commit murder requires a specific intent to kill"). Moreover, a jury could reasonably infer that the appellant's confinement and removal of Snodgrass would interfere with the performance of Snodgrass' governmental function as Congressman Jenkins' District Director. Accordingly, we find that the evidence is sufficient to sustain the appellant's conviction of attempted aggravated kidnapping.

### B. Jury Instruction

The appellant argues that the trial court erred in not instructing the jury concerning his right to make a citizen's arrest. Specifically, the appellant contends that

> [a]lthough Tennessee law places a stringent evidentiary burden upon anyone attempting to rely upon the right to make a citizen's arrest, as justification, the issue is one for a jury and not the court. The issue of whether defendant's conduct was fairly motivated by his perception that Mr. Snodgrass was complicitous and criminally culpable for stonewalling defendant's efforts to expose criminal behavior, although a stretch, should have been charged.

The appellant further explains that, because he believed his conduct to be lawful, an instruction regarding citizen's arrest would have allowed the jury to determine that he did not possess the mens rea required for the crime of attempted aggravated kidnapping.

> This court has previously stated,
> [i]n criminal cases, there is a positive duty upon a trial judge to give the jury a complete charge on the law applicable to the facts of the case. A defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the trial court. A defendant is also entitled to

an instruction upon request which outlines the defense theory of the case. Nothing short of a "clear and distinct exposition of the law" satisfies a defendant's constitutional right to trial by jury.

State v. Phipps, 883 S.W.2d 138, 149-150 (Tenn. Crim. App. 1994) (citations omitted); see also Poe v. State, 370 S.W.2d 488, 489 (Tenn. 1963). In other words, "[a] trial court should give a requested instruction if it is supported by the evidence, embodies a party's theory, and is a correct statement of the law." Phipps, 883 S.W.2d at 150 n.20.

The law of citizen's arrest, codified in Tenn. Code Ann. § 40-7-109 (1997), provides:
(a) A private person may arrest another:
(1) For a public offense committed in the arresting person's presence;
(2) When the person arrested has committed a felony, although not in the arresting person's presence; or
(3) When a felony has been committed, and the arresting person has reasonable cause to believe that the person arrested committed it.

Additionally, we note that Tenn. Code Ann. § 40-7-113(a) (1997) provides that "[a] private person who has arrested another for a public offense shall, without unnecessary delay, take the arrested person before a magistrate or deliver the arrested person to an officer."

The appellant contends that his testimony fairly raised the issue of citizen's arrest. At trial, the following colloquies occurred between defense counsel and the appellant and between the State and the appellant:

Defense counsel: [W]hat crimes or public offenses did you observe Mr. Snodgrass committing in your presence? . . .
Appellant: I was convinced, and believe, and I know that he was involved with conspiracy, abuse of power, and obstruction of justice, and abuse of office.
. . . .
State: And you are stating before this jury today, that you saw in your presence that day conspiracy being committed by Mr. Snodgrass?
Appellant: I think I have to qualify your statement by saying what I said earlier, that between the two letters that they had sent me, trying to simply banding me around, and circumvent the issues.
State: That amounted to conspiracy.
Appellant: Between all the stuff in that box, which showed crimes, which showed testimony, not testimony, but conversations tape recorded, showing derelictions of duty, showing circumventions of issue, showing people not coming to take witness statements from me, etc., etc., that that, sir, amounted to conspiracy by him, corroborating with the FBI to simply say, let's just frustrate this man.
State: And that amounted to an abuse of office too?
Appellant: I'd have to agree with that, yes.
Q: And that amounted to obstruction of justice too?

-7-

A: I definitely would agree with that too.

In sum, the appellant believed that Snodgrass had committed a crime because Snodgrass did not examine the fifty-pound box of "evidence" the appellant brought to Congressman Jenkins' office and, therefore, Snodgrass was involved in a conspiracy against the appellant. However, there is no proof in the record that Snodgrass committed any of the crimes that the appellant enumerated. See Tenn. Code Ann. §§ 39-12-103 (criminal conspiracy), 39-16-402 (official misconduct), and -601 through -609 (obstruction of justice) (1997). Moreover, if the appellant believed he could lawfully arrest Snodgrass, he should have "delivered" him to Detectives Bell and Moffatt or asked the officers to make the arrest of Snodgrass. See Tenn. Code Ann. § 40-7-113. It has long been the law of this state that

> a private person makes an arrest at his own peril; and to justify that arrest, he must show as a fact that the offense for which the arrest was made was committed; and probable cause to believe that the offense was committed will not justify the arrest when, in fact, no offense was committed. We cannot conclude that our lawmakers intended otherwise. Too frequently, private persons who make arrests are interested. That interest is bound to warp and influence their judgment. A great majority of our legislative bodies and our courts have declared that freedom from arrest is a more sacred right than the granting of the privilege and authority to a private person to make an arrest upon reasonable grounds and probable cause to believe that an offense has been committed. Reason and experience justify the wisdom of that rule.

Martin v. Castner-Knott Dry Goods Co., 181 S.W.2d 638, 642 (Tenn. App. 1944).

The appellant essentially argues that, because he mistakenly believed that he had the authority to arrest Snodgrass, he did not possess the requisite intent to commit attempted aggravated kidnapping. In other words, "the [appellant's] contention is, in reality, nothing more than a claim that he was [mistaken about] the law. . . . [However], such a claim does not provide a defense, an excuse, or justification." State v. Anderson, 894 S.W.2d 320, 322 (Tenn. Crim. App. 1994). Specifically, we note that "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." Cheek v. United States, 498 U.S. 192, 199, 111 S. Ct. 604, 609 (1991). Moreover, Justice Ginsburg has previously stated that, "[t]he mens rea presumption requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption . . . that, ordinarily, '. . . mistake of law is no defense to criminal prosecution.'" Staples v. United States, 511 U.S. 600, 622 n.3, 114 S. Ct. 1793, 1805 n.3 (1994) (Ginsburg, J., concurring) (citation omitted). The appellant only contends that he acted under the mistaken belief that his conduct was lawful and does not dispute that he intended to confine Snodgrass and remove him from Congressman Jenkins' office. Our supreme court has indicated that "'[t]he fact that a person honestly believes that he has a right to do what the law declares to be illegal will not affect the criminality of the act.'" Hunter v. State,

12 S.W.2d 361, 362 (Tenn. 1928).  Accordingly, we conclude that the facts of this case did not warrant an instruction on citizen's arrest.

### III.  Conclusion
Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE